IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OMAR TYRICK SHAW, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL NUTTER | : | No. 15-1209 |
| LOUIS GIORLA | : | |
| MICHELLE FARRELL, | : | |
| | : | |
| Defendants. | : | |

**Mitchell S. Goldberg, J.**                                                                 **March 6, 2017**

## MEMORANDUM OPINION

*Pro se* Plaintiff, Omar Tyrick Shaw, brings this action under 42 U.S.C. § 1983 ("Section 1983"). He alleges violations of his constitutional rights while incarcerated as a pretrial detainee within the Philadelphia Prison System ("PPS"). Defendants, represented by the City of Philadelphia Law Department ("City"), have filed a motion to dismiss for failure to state a claim. In an order dated May 9, 2016, Shaw was directed to file a written response to the Defendants' motion to dismiss, or ask the Court to decide the motion without a response from him.[1]

Shaw did not file a response to the Defendant's motion to dismiss. Defendants filed a second motion to dismiss for lack of prosecution on February 14, 2017. However, a motion to dismiss for failure to state a claim should not be granted solely because the motion is unopposed. Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991) (stating that before dismissal a court should analyze the complaint to determine if it does, in fact, state a claim); see

---

[1] This case was transferred from the late Honorable Judge Norma L. Shapiro's docket to my docket on August 1, 2016. (Doc. No. 15).

also Ray v. Reed, 240 F. App'x 455, 456 (3d Cir. 2007) ("[A] motion to dismiss under Rule 12(b)(6) should not be granted without an analysis of the underlying complaint, notwithstanding local rules regarding the granting of unopposed motions.").

Accordingly, I will deny Defendants' second motion to dismiss based upon lack of prosecution and will consider the facts in Shaw's amended complaint. For the reasons explained below, Defendants' first motion to dismiss will be granted in part and denied in part.[2]

## I.   FACTUAL BACKGROUND

Shaw filed his original complaint on March 9, 2015. This complaint was dismissed for failure to state a claim because Shaw failed to include allegations that the Defendants were personally involved in the alleged deprivation of his constitutional rights. (Doc. No. 6). Shaw was given leave to file an amended complaint, which he filed on October 28, 2015. (Doc. No. 8). In his amended complaint, Shaw asserts claims against Defendants acting as supervisors: Michael Nutter, the former Mayor of Philadelphia; Louis Giorla, the former Commissioner of the PPS; and Michelle Farrell, former Warden of Curran-Fromhold Correctional Facility ("CFCF").

Shaw appears to allege three distinct claims: (1) that his constitutional rights under the Fourteenth Amendment were violated as a result of overcrowded prison conditions, commonly referred to as a "triple celling" claim (Claim I);[3] (2) that his constitutional right

---

[2] Any reference to Defendants' motion to dismiss from here on will be referencing Defendants' first motion to dismiss. (Doc. No. 10.)

[3] Triple celling claims allege that constitutional violations arise due to the plaintiff, along with two or three other men, being housed together in a cell originally designed for two people. The third man typically sleeps in a plastic bed (referred to as a "boat") that is placed on the floor of the cell in between the bottom bunk and the toilet.

under the First Amendment to freely practice religion was violated (Claim II); and (3) a tort claim for intentional infliction of emotional distress (Claim III). The City filed a motion to dismiss on behalf of all Defendants.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. While it "does not impose a probability requirement at the pleading stage," plausibility does require "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must take the following three steps: (1) the court must "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "where there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220.

A *pro se* plaintiff's complaint is to be read liberally, particularly where that plaintiff is a prisoner. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004) (citing Alston v Parker, 363 F.3d 229, 233-34 (3d Cir. 2004)). A motion to dismiss for failure to state a claim should be

granted only if it appears beyond doubt that a *pro se* plaintiff can prove no set of facts in support of the claim that would entitle him to relief.  Leamer v. Fauver, 288 F.3d 532, 547 (3d Cir. 2002). While a *pro se* plaintiff cannot be held to as high a pleading standard as other litigants, a court cannot infer facts central to the plaintiff's claims that are not stated in the complaint or other documents before the court.  See, e.g., Hamilton v. Jamieson, 355 F. Supp. 290, 298 (E.D. Pa. 1973); Wells v. Brown, 891 F. 2d 591, 592-94 (6th Cir. 1988) (collecting cases where courts have required *pro se* litigants to adhere to basic pleading requirements); Case v. State Farm Mutual Automobile Insurance Co., 294 F.2d 676, 678 (5th Cir. 1961) ("[T]here is no duty [on the part] of the trial court or appellate court to create a claim which appellant has not spelled out in his pleading.").

### III. DISCUSSION

Defendants' motion asserts that the amended complaint fails to state a claim because Shaw failed to allege the Defendants' "personal involvement" in the alleged constitutional violations.  Defendants do not make a distinction between the Fourteenth Amendment and First Amendment violations alleged, and do not address the intentional infliction of emotion distress claim in their motion to dismiss.  I will address each claim in turn below.

#### A. Claim I – Triple Celling

Shaw first argues that Defendants violated his 5th, 8th, and 14th Amendment rights in ignoring the practice of triple celling at CFCF.  Shaw states that he has been placed in three-man and four-man cells that are dirty, forced to sleep on the floor on a plastic boat, and subjected to various diseases and bodily pains due to sleeping on the boat.  He alleges that Defendant Nutter knew about the conditions because Shaw wrote letters to Nutter.  Shaw explains that similar lawsuits have been filed and there is "no way [Nutter] could or would have been oblivious to the

defendant and other situations and thereof." Regarding Defendant Giorla, Shaw states that he knew about the situation because Shaw spoke with Giorla on two occasions and asked to be moved to a different cell, to which Giorla said "I can't do anything about it." Shaw also cites to an interview with Giorla by the Metro newspaper regarding the overcrowding. Finally, Shaw alleges Defendant Farrell knew about the conditions because Shaw filed numerous grievances and spoke with Farrell once. (Am. Compl. at 1-4.) Defendants argue that Shaw has failed to allege that they were personally involved in the alleged wrongs. (Mot. at 2-3.)

A pretrial detainee's conditions of confinement claim, including a triple celling claim, is analyzed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which proscribes pretrial punishment. Bell v. Wolfish, 441 U.S. 520, 534 (1979); Hubbard v. Taylor, 399 F.3d 150, 166-67 (3d Cir. 2005). A condition of confinement is unconstitutional punishment if it results from an express intent to punish or is not rationally related to a legitimate governmental purpose. Bell, 441 U.S. at 538-39. In assessing whether triple celling is rationally related to a legitimate government purpose, a court must determine whether triple celling serves any legitimate purpose and, if so, whether it is rationally related to that purpose. Hubbard v. Taylor, 538 F.3d 229, 232 (3d Cir. 2008) ("Hubbard II"). To determine whether triple celling is rationally related to a government's legitimate purpose, a court must inquire whether "these conditions 'cause inmates to endure such genuine privations and hardship over an extended period of time,' that the adverse conditions become excessive in relation to the purposes assigned to them." Id. at 233. The court must "look to the totality of the conditions" at the prison in assessing the excessiveness of the conditions. Id.

Here, Defendants do not discuss whether triple celling serves a legitimate purpose, however, the United States Court of Appeals for the Third Circuit has found that triple celling

serves the legitimate purpose of managing an overcrowded prison.  Id. (citing Bell, 441 U.S. at 540).  Shaw's amended complaint does not specifically address whether triple celling is rationally related to the legitimate purpose of managing an overcrowded prison.  However, his amended complaint lists several allegations of unsanitary, unsafe, or otherwise inadequate conditions that, construed liberally, imply that Shaw contends that the triple celling conditions are excessive such that there is no rational relationship between the conditions and managing an overcrowded prison.  His allegations provide a glimpse of the totality of the circumstances that Shaw experienced.  For example, Shaw states he was "in a 3 man cell sleeping on the floor," causing him "neck, back and head pains."  Shaw further states the "boat [he] sleeps on is approximately 3 feet away from the toilet so . . . urine gets on him" and that "being made to sleep on the floor has caused . . . mental health issues compelling him to take psychological medications."  He also alleges he experiences "constant lockdowns on end depriving him from adequately cleansing himself," and that the clothing provisions and laundry access are extremely limited.  (Am. Compl. at 3-4.)

  The facts alleged, construed liberally and taken as true, provide enough detail about the circumstances in the prison to survive a motion to dismiss.  The allegations plausibly plead that the triple celling conditions are "excessive in relation to the purposes assigned them," and thus are not rationally related to the purpose of managing an overcrowded prison.  See Peele v. Delaney, No. 12-4877, 2017 WL 467347, at *2 (E.D. Pa. Feb. 3, 2017) (finding that the facts pled provided sufficient detail to survive a motion to dismiss, though plaintiff had not specifically addressed whether triple celling is rationally related to the legitimate purpose of managing an overcrowded prison).

Under Section 1983, a plaintiff must also demonstrate that the defendant, acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States.  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  While, "[g]overnment officials may not be held liable [under section 1983] for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*," there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." Barkes v. First. Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds*, Taylor v. Barkes, 135 S. Ct. 2042 (2015).  Supervisor-defendants may be liable if they were "personally involved" in the constitutional violation, *i.e.* they participated in it, directed others to commit it, or had actual knowledge of and acquiesced in it.  Id.  Supervisor-defendants may also be liable if "they, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm.'"  Id. (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).

Post-Twombly, the Third Circuit requires that a plaintiff alleging personal involvement "plausibly plead facts,"  Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010), and that a plaintiff alleging a policy, practice, or custom demonstrating deliberate indifferent must do so with "specificity" as to "exactly" the policy, practice, or custom.  McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).

   i. *Knowledge and Acquiescence*

Shaw has not alleged any facts to suggest that Defendants directly participated in the alleged misconduct or that they directed others to commit it.  Rather, Shaw's allegations center on Defendants' apparent knowledge of the misconduct and failure to intervene.  As such, I will proceed under the theory of supervisory liability involving knowledge and acquiescence.

7

For a supervisor to be held liable through knowledge and acquiescence, they must contemporaneously know of the violation of a plaintiff's rights and fail to take action. See Banks v. Rozum, 639 F. App'x 778, 784 (3d Cir. 2016); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997), *abrogated on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). "Allegations of . . . actual knowledge and acquiescence, however, must be made with appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

In his amended complaint, Shaw attributes knowledge and acquiescence to Nutter through letters, Giorla through conversations and weekly tours of CFCF, and Farrell through grievances and a conversation. Viewing the complaint in a light most favorable to Shaw, I find that he has not alleged sufficient facts to establish that Nutter was personally involved in the constitutional violation. The only fact Shaw alleges regarding Nutter's personal involvement is that he sent letters to Nutter. This fact alone is not sufficient to demonstrate personal involvement. See, e.g., Smith v. Danberg, No. 07-476, 2010 WL 2400468, at *5 (D. Del. June 15, 2010) (observing that a plaintiff's allegation that he sent letters to defendants regarding a prison condition was not enough to show actual knowledge); Bullock v. Horn, No. 3CV991402, 2000 WL 1839171, at *5 (M.D. Pa. Oct. 31, 2000) ("Merely asserting that Plaintiff sent letters to these two defendants will not suffice. Indeed, it would be anomalous to suggest that a prisoner could name as a Defendant any governmental official whatsoever, no matter how far removed in the chain of authority from the actual conduct in question, simply by sending that official a letter.").

I find that Shaw has, however, alleged sufficient facts to establish that Defendants Giorla and Farrell were personally involved through knowledge and acquiescence. As to

8

Giorla, Shaw states that he sent multiple letters to Giorla, spoke with Giorla twice about overcrowding, and that Giorla told him there was nothing he could do about the overcrowding. Though letters alone cannot establish knowledge, Shaw describes a scenario where he sent letters, actually spoke with Giorla twice, and was then told by Giorla that nothing could be done. This is enough to allege knowledge and acquiescence, and to thus survive a motion to dismiss.

As to Farrell, Shaw states that he filed grievances with Farrell and spoke with her about the overcrowding. Shaw also asserts that Farrell "does weekly tours and is aware that the blocks hold twice as much people that its suppose to [sic]." (Am. Compl. at 2-3.) Though filing a grievance is not enough to impute knowledge, see Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006); Rode, 845 F.2d at 1208, allegations of Farrell performing weekly tours of the prison and Shaw speaking with Farrell are enough to plausibly plead knowledge and acquiescence.

### ii. Deliberate Indifference

Shaw has not explicitly argued that Defendants established and maintained a policy, practice, or custom which directly caused the constitutional harm of which he complains. He does, however, allege that Nutter "controls and promulgates" policies governing the PPS, Giorla "operate[s] and enforce[s] policies and procedures within the [PPS]," and that Farrell "is the overseer of policies, operations . . . and is aware that the blocks hold twice as much people that its supposed to [sic]." (Am. Compl. at 1-3.)

The Third Circuit has adopted a test to evaluate whether supervisors are liable under Section 1983 for deliberate indifference to an unconstitutional policy, practice, or custom. "The plaintiff must (1) identify the specific supervisory practice or procedure that the

9

supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)). A plaintiff must specifically identify the acts or omissions of the supervisors that show deliberate indifference, and suggest to the court a relationship between the "identified deficiency" of a policy or custom and the injury suffered. Id.

Defendants do not address whether Shaw has alleged facts establishing a policy, practice, or custom with deliberate indifference to the resulting harm, however, I find that Shaw has not. The amended complaint merely states the Defendants' job titles and that they either (1) are responsible for managing or overseeing operations at CFCF or (2) promulgated policies governing the PPS. Without additional factual support, these conclusory allegations are insufficient to allege that Defendants were deliberately indifferent to the harm caused by a policy, practice, or custom.

In sum, as to Giorla and Farrell, the amended complaint contains factual allegations that, construed in the light most favorable to Shaw, (1) satisfy the elements of an underlying violation of the Due Process Clause connected to the practice of triple celling in the PPS, and (2) sufficiently alleges supervisory liability for a Fourteenth Amendment violation under Section 1983. The amended complaint fails to allege sufficient facts to establish supervisory liability as to Nutter.

### B. Claim II – First Amendment Violation

Shaw next argues that Defendants violated his First Amendment rights. He contends that the triple celling conditions prevent him from being able to practice his religion due to limited space for praying. (Am. Compl. at 4.) Defendants do not address this allegation in their motion.

Individuals have a constitutionally protected right to follow the religious teachings and practices of their choice. Employment Div. v. Smith, 494 U.S. 872, 881-83 (1990). An inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). In Turner v. Safley, the Supreme Court outlined four factors (the "Turner Factors") that are relevant when determining if a prison regulation is valid:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. . . . A second factor relevant in determining the reasonableness of a prison restriction . . . is whether there are alternative means of exercising the right that remain open to prison inmates. . . . A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. . . . Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

Id. at 89-90.

Applying Turner, the Third Circuit has adopted a two-step analysis for determining if a prison regulation is rationally related to a penological interest. "First, the prison has the burden of demonstrating the First Turner Factor. This burden is slight, and in certain instances, the connection may be a matter of common sense. Second, if the prison meets its burden under the First Turner Factor, then we consider the Other Turner Factors." Sharp v. Johnson, 669 F.3d 144,

11

156 (3d Cir. 2012) (internal citations omitted); see also Fontroy v. Beard, 559 F.3d 173, 177 (3d Cir. 2009) ("Although the Inmates bear the ultimate burden of showing that the DOC's new mail policy is unconstitutional, it is the DOC Officials' burden to demonstrate that a rational connection exists between the policy and a legitimate penological interest"); Monroe v. Beard, 536 F.3d 198, 207 (3d Cir. 2008) (stating that the party challenging the regulation bears the burden of showing that it is unreasonable, but that the prison must come forward with a legitimate interest justifying the regulation). The Third Circuit further explained in Jones v. Brown, 461 F.3d 353, 360-61 (3d Cir. 2006), that the "ultimate burden of persuasion with regard to the reasonableness of a regulation" is on the inmate, but the prison is required to "put forward the legitimate governmental interest alleged to justify the regulation and demonstrate that the policy drafters could rationally have seen a connection between the policy and [that interest]."

In his amended complaint, Shaw states only that "being forced to be in a 3 man cell stops him from practicing his religion freely because the limited space [means] he cannot pray therefore violating his First Amendment [rights]." (Am. Compl. at 4.) Shaw has not alleged that the PPS policy of triple celling inmates serves "no legitimate penological objectives." See Pell, 417 U.S. at 822; see also Newman v. Beard, 617 F.3d 775, 781 (3d Cir. 2010) (affirming dismissal of an inmate's First Amendment claim where the inmate did not allege that the regulation at issue did not serve a legitimate penological purpose or was not reasonably related to the purpose of rehabilitation). Shaw has also failed to plead any facts related to the three other Turner Factors: (2) the facts on the record are not sufficient to determine if the policy was reasonable, or if there are alternative means for Shaw to exercise his right to pray; (3) there is no mention of the impact an accommodation for Shaw would have on guards, other inmates, or allocation of prison resources; and (4) there is no mention of the presence or absence

of alternative policies or measures. The facts as plead, even construed liberally, are not sufficient to show a violation of the First Amendment right to practice religion, and I will therefore dismiss Shaw's First Amendment claim.

### C. Claim III – Intentional Infliction of Emotional Distress

Shaw's final claim is that Defendants intentionally inflicted emotional distress on him when they placed him in a three-man cell. He states that the "forced actions of being made to sleep on the floor has caused the plaintiff emotional distress [and] mental health issues compelling him to take psychological medications." (Am. Compl. at 6.) Defendants do not address this claim in their motion to dismiss.

To establish a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must plead that defendants engaged in: "(1) extreme and outrageous conduct, (2) performed intentionally or recklessly, (3) causing emotional distress, (4) which is severe." Serine v. Marshall, No. 14–4868, 2015 WL 803108, at *4 (E.D. Pa. Feb. 25, 2015). A "court must make the initial determination of whether a defendant's conduct was so extreme and outrageous that recovery may be justified." Small v. Juniata College, 682 A.2d 350, 355 (Pa. Super. Ct. 1996).

Taken in the light most favorable to Shaw, and construed liberally, the amended complaint does not allege any direct actions by any of the Defendants, other than the fact that Defendants were aware of the overcrowded prison conditions and that they "cultivated and maintained a hostile atmosphere and environment." (Am. Compl. at 6.) Shaw has not pled any facts showing that Defendants' conduct was intentional, outrageous, and/or resulted in a physical injury to him. Even if he could prove a physical injury, no reasonable trier of fact could conclude that any of Defendants' intentional actions directed at Shaw were so outrageous or

extreme that they would be liable for intentional infliction of emotional distress. Therefore, I find Shaw has failed to plead sufficient facts to plausibly state a claim for intentional infliction of emotional distress and will dismiss this claim.

## IV.     LEAVE TO AMEND

After a motion to dismiss has been filed, a district court should inform a plaintiff he has leave to amend his complaint within a set period of time, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). As stated above, even if Shaw could prove a physical injury, no reasonable trier of fact could conclude that any of Defendants' intentional actions were so outrageous or extreme that they could be liable for intentional infliction of emotional distress. It would be futile to allow Shaw to amend his complaint in an attempt to state a valid claim of intentional infliction of emotional distress, and I therefore will not give him leave to amend this claim. I also will not give Shaw leave to amend his Fourteenth Amendment claim as to Nutter because he has already amended his complaint and failed to allege sufficient facts with respect to this claim. See In re Avandia Mktg., Sales Practices & Prod. Liab. Litig., 564 F. App'x 672, 673 (3d Cir. 2014) ("Denial of leave to amend a complaint is especially appropriate where a party has already been given the opportunity to amend the complaint.").

It is conceivable, however, that Shaw could amend his complaint to more clearly detail facts to support a claim that his First Amendment rights were violated due to prison conditions during his incarceration. Consequently, Shaw will be given leave to amend his complaint with respect to the First Amendment claim within thirty (30) days of this Memorandum Opinion.

V.     CONCLUSION

For the reasons discussed above, I will deny Defendants' motion to dismiss for lack of prosecution.  I will also deny Defendants' first motion to dismiss with respect to the Fourteenth Amendment violation by Defendants Giorla and Farrell.  I will grant Defendants' motion to dismiss as to Shaw's Fourteenth Amendment claim against Defendant Nutter, First Amendment claim against all Defendants, and intentional infliction of emotion distress claim against all Defendants.  I will give Shaw leave to amend his complaint within thirty (30) days as to only his First Amendment claim.  An appropriate Order follows.